AMENDED SUMMARY ORDER
J.D. Smith, Jr., and Charles W. Piquet appeal the order of the United States District Court for the Northern District of New York (Mordue, J.) on September 30, 2007, granting summary judgment in favor of defendants-appellees. Smith and Pi-quet filed suit against New Venture Gear, Inc. and Daimler Chrysler Corporation (collectively, “NVG”), as well as Mike Allen, in his capacity as President of United Automobile, Aerospace and Agricultural Implement Workers of America Local 624 (“UAW Local”), and Stephen Yokich, in his capacity as President of the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (“UAW International” and collectively, with UAW Local, the “Union”) for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e to 2000e-17; 42 U.S.C. §§ 1981, 1981a (collectively, “ § 1981”); and contractual obligations. Piquet also sued for violation of N.Y. Exec. Law §§ 290-301. We assume the parties’ familiarity as to the facts, the procedural context, and the specification of appellate issues.
We review the order of the district court granting summary judgment de novo, “construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in that party’s favor.” Mathirampuzha v. Potter, 548 F.3d 70, 74 (2d Cir.2008) (internal quotation marks and brackets omitted).
I. Allegations of Smith
A. Disparate Treatment and Racial Discrimination
“A plaintiff seeking relief under Title VII has the burden of making out a prima facie case of discrimination.” Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir.2008). This requires the plaintiff to show: (1) membership in a protected class; (2) qualification for the job in question; (3) adverse employment action; and (4) circumstances surrounding that action that permit an inference of discrimination. See id. (citing, inter alia, McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). Once the plaintiff has established a prima facie case, unlawful discrimination is presumed unless the employer can demonstrate that the adverse employment action took place for nondiscriminatory reasons. St. Mary’s Honor Ctr. v. Hicks, 509 U.S. 502, 506-07, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).
We assume, without ruling, that Smith has made out a prima facie case, but *55 conclude that NVG has provided a sufficient nondiscriminatory reason for terminating Smith, namely that his prior record of altercations and his most recent altercation with Reinhardt were sufficient to warrant termination. Also, we conclude that the district court was correct in its finding that there is insufficient evidence that NVG engaged in disparate treatment between its black and other employees. The three incidents to which Smith points on appeal — the Reid-Fiore incident, Reid— “Mike” incident, and Flanagan-Sealy incident — as evidence of disparate treatment do not support Smith’s argument. With regard to the first two incidents, the minimal description provided in Martin-Weatherly’s deposition fails to address important aspects of these altercations, such as the injuries sustained, if any, and the disciplinary records of the individuals involved. As a result, Smith’s evidence of these two incidents is wholly insufficient to show that the employees involved were similarly situated to Smith for the purposes of establishing Smith’s prima facie case of discrimination. See Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 95-96 (2d Cir.1999). As for the Flanagan-Sealy incident, the record shows that Flanagan received far less punishment than Sealy and was eventually compensated for all his time off. Thus, the incident fails to evidence the kind of unequal discipline necessary to support a disparate treatment allegation. Our consideration of the comparisons that Smith attempts to draw between the two events does not lead us to a different conclusion.
Lastly, we conclude that the report cited by Smith for the proposition that blacks were three times more likely to be disciplined than whites does not provide sufficient evidence of disparate treatment. A “plaintiff may use statistical evidence regarding an employer’s general practices at the pretext stage to help rebut the employer’s purported nondiscriminatory explanation” and “reveal patterns of discrimination against a group of employees.” Hollander v. Am. Cyanamid Co., 895 F.2d 80, 84 (2d Cir.1990). However, as the report submitted by Smith admits “[t]he data files provided to date by [NVG] omit most of the information necessary for examination of this question.” Without details of the circumstances behind disciplinary actions, the report was unable to “assess the justification for the discipline” and therefore determine whether the disciplinary action taken was justified. Furthermore, the report noted that there was “an extremely high error rate” which was “particularly harmful in such a small sample.” Therefore, while the report illustrates that black employees tend to be disciplined more often than white employees, the lack of accurate evidence, context surrounding disciplinary action, and the high error rate call into question the accuracy of the report, and the report is therefore not sufficient to demonstrate that NVG engaged in disparate treatment based on race. Therefore, the district court was correct in granting summary judgment as to Smith’s discrimination and disparate treatment claim.
B. Retaliation
“To establish a prima facie case for retaliation, a plaintiff must demonstrate[: (1) ] participation in protected activity known to the defendant, [ (2) ] an employment action disadvantaging the person engaged in the protected activity, and [ (3) ] a causal connection between the protected activity and the adverse employment action.” Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir.2000) (internal quotation marks omitted).
In his appeal, Smith contends only that because he informed an upper level *56 manager, John Hayes, about the alleged racial incidents, NVG was aware of this activity. Assuming that NVG was aware that Smith was making complaints about alleged racist conduct, Smith does not allege any causal connection between NVG’s awareness of Smith’s complaints and NVG’s termination of Smith for his altercation with Reinhardt. Therefore, the district court was correct in granting summary judgment as to Smith’s retaliation claim.
C. Hostile Work Environment
To survive a motion for summary judgment on a hostile work environment claim, the plaintiff must demonstrate: “(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of his or her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer.” Mack v. Otis Elevator Co., 326 F.3d 116, 122 (2d Cir.2003) (internal quotation marks and brackets omitted). A hostile work environment claim may be based on one incident, but “we require that the incident constitute an ‘intolerable alteration’ of the plaintiffs working conditions, so as to substantially interfere with or impair his ability to do his job.” Potter, 548 F.3d at 79 (citation omitted).
Based on our review of the record, we agree with the district court that “Smith has failed to present evidence that would permit a reasonable factfinder to find that the workplace was permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of his employment.” Smith v. New Venture Gear, Inc., No. 99-civ-2086, 2007 WL 2948945, at *8 (N.D.N.Y. Sept.30, 2007). Even viewed in a light most favorable to Smith, the record evidence on which Smith relies demonstrates at most isolated or episodic incidents involving racial slurs or other discriminatory conduct. Such evidence does not rise to the level of severity or pervasiveness needed to support a hostile work environment claim. See Richardson v. N.Y. State Dep’t of Corr. Serv., 180 F.3d 426, 437 (2d Cir.1999), abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). Therefore, the district court was correct in granting summary judgment in favor of NVG as to Smith’s hostile work environment claim.
II. Allegations of Piquet
A. Racial Discrimination and Retaliation
As to Piquet’s claim that he was discriminated on the basis of race, we assume without ruling that Piquet can make a claim, but like the district court we conclude that Piquet has not sufficiently rebutted NVG’s legitimate non-discriminatory reason for the adverse employment action taken against Piquet. The record demonstrates that Piquet was temporarily laid off in 1996 and temporarily discharged in 1997 for repeated truancy, tardiness, and sleeping on the job. Piquet admits to falling asleep and does not deny the claims that he was absent or late to work without excuse on some occasions. His truancy and tardiness also fully explain why Piquet may not have been given as much work as his co-workers, as orders were distributed at the beginning of shifts when Piquet may not have yet arrived. Furthermore, he does not rebut the statements by NVG human resources personnel or his supervisor at the time that any mistakes made with regard to his attendance were inadvertent and corrected-to Piquet’s benefit- *57 and that the supervisor had the right to inspect and handle Piquet’s time card.
Also, given Piquet’s truancy and tardiness, no reasonable trier of fact could conclude that Rey’s reprimands were unreasonable. Piquet’s claim that Rey scrutinized Piquet more than other employees and at the expense of inspecting the remainder of the facility, and his claim that Rey made racial comments to Kevin Burke, an African American co-worker, is not an adverse employment action but is more appropriately dealt with as part of Piquet’s hostile work environment claim. Therefore, the district court was correct in granting summary judgment to NVG on Piquet’s discrimination claim.
We also hold that the district court was correct in granting summary judgment to NVG on Piquet’s retaliation claim. First, there is no evidence that Piquet’s 1996 layoff was causally connected to complaints to the Union or the Human Resources Department of NVG regarding Rey’s conduct or mistakes made in Piquet’s attendance records. Second, assuming that Piquet can make out a claim for retaliation regarding his 1997 temporary discharge, in light of the temporal proximity between his meeting with Owens about Rey and his subsequent suspension, his truancy, tardiness, and somnolence while at work are sufficient non-discriminatory reasons for NVG to suspend Piquet and are undisputed.
B. Hostile Work Environment
Piquet claims that the hostile work environment caused by Rey’s actions, the offensive graffiti and epithets around the facility, and “unchecked” racial joking was so severe that it caused Piquet to have a “nerve breakdown.” However, Piquet does not provide any support for his claim that he suffered any mental impairment as a result of any conduct — racial or otherwise — by an NVG employee. To support his hostile work environment claim on appeal, in addition to his own testimony, Piquet relies on the testimony of Dixie Cole, Zachary Oliver, Douglas Medley, Lorenzo Davis, and Kevin Burke. It appears that some of the incidents alleged by Cole, Oliver, Medley, Davis, Burke, and Piquet were unreported, and it is unclear from Burke’s affidavit whether he reported racial incidents he observed or reported his belief that the criticism he received from Rey was racially motivated. To the extent that these incidents were not reported, there is no way a reasonable trier of fact could impute these incidents to NVG. As for the remaining incidents, many lack evidence of a racial component; others, such as when Oliver discovered the letters “KKK” written on a piece of cardboard, were investigated and appropriately dealt with by NVG. Even viewed in a light most favorable to Piquet, the evidence as a whole demonstrates no more than isolated or episodic instances of hostile conduct. Therefore, the district court was correct in granting summary judgment for NVG on Piquet’s hostile work environment claim.
III. Claims Against the Union
A union has a duty to fairly represent its members in grievances against an employer. 29 U.S.C. § 158(b). This duty includes an “obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.” Vaca v. Sipes, 386 U.S. 171, 177, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). “[B]reach [of this duty] occurs only when a union’s conduct toward a member ... is arbitrary, discriminatory, or in bad faith,” United Steelworkers of Am., AFL-CIO-CLC v. Rawson, 495 U.S. 362, 372, 110 S.Ct. 1904, *58 109 L.Ed.2d 362 (1990) (internal quotation marks omitted), or “when [the union] causes an employer to discriminate against employees on arbitrary, hostile, or bad faith grounds,” Ramey v. Dist. 141, Int’l. Ass’n of Machinists & Aerospace Workers, 378 F.3d 269, 277 (2d Cir.2004) (internal quotation marks and citation omitted). “A union may not, without a legitimate purpose, take action favoring some of its members at the expense of others.” Id. (internal quotation marks and brackets omitted). “[T]he duty of fair representation is not breached where the union fails to process a meritless grievance, engages in mere negligent conduct, or fails to process a grievance due to error in evaluating the merits of the grievance.” Cruz v. Local Union No. S of Int’l. Bhd. of Elec. Workers, 34 F.3d 1148, 1153-54 (2d Cir.1994).
As the district court noted, Smith and Piquet state only breach of contract claims against the Union in their second amended complaint. Nevertheless, the district court assumed for the sake of argument that the parties had asserted race discrimination claims against the Union under Title VII, § 1981, and New York State Human Rights Law, as well as claims for breach of the duty of fair representation under 29 U.S.C. §§ 158, 185, and state contract law. We adopt the same assumption for the purposes of our analysis. The district court further surmised that each of these claims call for application of the same legal standards to determine whether plaintiffs’ showing was sufficient to survive summary judgment. Plaintiffs do not challenge this assessment of the law.
In the case of Smith, the record shows that the Union met with NVG representatives several times to advocate for Smith’s reinstatement before deciding not to continue pursuing Smith’s grievance. Piquet makes the conclusory claim that the Union did not “adequately deal [with] his claim” but provides no evidentiary support. The Union’s evidence of diligent and nondiscriminatory handling of each claim, coupled with Smith’s and Piquet’s failure to demonstrate the merit of their grievances, leaves no question of fact with respect to whether the Union performed its duties adequately and without racial animus. Therefore, the district court was correct in granting summary judgment to the Union and its representatives as to Smith and Piquet’s claims against them.
Accordingly, for the reasons set forth above, the judgment of the district court is AFFIRMED.