Preston v. Bristol Hospital

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 31st day of March, two thousand sixteen.

PRESENT: DENNIS JACOBS,
         PETER W. HALL,
         GERARD E. LYNCH,
                    Circuit Judges.

- - - - - - - - - - - - - - - - - - - -X

DUSTI PRESTON,
        Plaintiff-Appellant,

        -v.-                                    15-1150

BRISTOL HOSPITAL,
        Defendant-Appellee.
- - - - - - - - - - - - - - - - - - - -X

FOR APPELLANT:              Megan L. Piltz, James V.
                           Sabatini, Sabatini & Associates,
                           LLC, Newington, Connecticut.

FOR APPELLEE:              Susanne Kantor, Greg A. Riolo,
                           Jackson Lewis P.C., White
                           Plains, New York.

1

Appeal from a judgment of the United States District Court for the District of Connecticut (Chatigny, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be **AFFIRMED.**

Plaintiff Dusti Preston appeals from the judgment of the United States District Court for the District of Connecticut (Chatigny, J.), granting summary judgment in favor of defendant-appellee Bristol Hospital (the "Hospital") and dismissing Preston's claims arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"); the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"); and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60 et seq. ("CFEPA"). Preston was formerly employed by the Hospital as a CAT Scan Technician. She contends that the Hospital subjected her to sex-plus, marital status, and disability discrimination, and retaliation. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

We review de novo a district court's grant of summary judgment, "viewing the record in the light most favorable to the non-moving party." Dillon v. Morano, 497 F.3d 247, 251 (2d Cir. 2007). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a 'genuine issue' exists where the evidence is such that a reasonable jury could decide in the non-movant's favor." Delaney v. Bank of Am. Corp., 766 F.3d 163, 167 (2d Cir. 2014) (per curiam) (ellipsis omitted) (quoting Beyer v. Cty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008)). "[C]onclusory statements or mere allegations [are] not sufficient to defeat a summary judgment motion." Davis v. New York, 316 F.3d 93, 100 (2d Cir. 2002).

Preston's claims are analyzed pursuant to the McDonnell Douglas burden-shifting framework. See McDonnell Douglas Corp v. Green, 411 U.S. 792, 802-05 (1973) (Title VII discrimination); Kaytor v. Elec. Boat Corp., 609 F.3d 537, 556 (2d Cir. 2010) (CFEPA discrimination and retaliation);

2

_Sista v. CDC Ixis N. Am., Inc._, 445 F.3d 161, 169 (2d Cir. 2006) (ADA discrimination); _Terry v. Ashcroft_, 336 F.3d 128, 141 (2d Cir. 2003) (Title VII retaliation).  "A plaintiff must establish a prima facie case; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the [adverse employment action]; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext."  _Sista_, 445 F.3d at 169.  Preston contends that she experienced several adverse employment actions, and that each was motivated by various bases of discrimination and/or retaliation.

**1.    MediTech Team/SuperUser Status:** Preston contends that the Hospital denied her a position on the 2011 MediTech team because of her sex and marital status--and more specifically, her status as a single mother, which is the theory behind both of these claims.  The district court concluded that a reasonable jury could not find that Preston was subjected to an adverse employment action when denied a position on the 2011 MediTech team (_i.e._, denied SuperUser status).  We agree.  "We define an adverse employment action as a 'materially adverse change' in the terms and conditions of employment."  _Sanders v. N.Y.C. Human Res. Admin._, 361 F.3d 749, 755 (2d Cir. 2004) (quoting _Richardson v. N.Y.S. Dep't of Corr. Serv._, 180 F.3d 426, 446 (2d Cir. 1999)).  SuperUsers trained other members of the department to use the new MediTech software.  But being termed a "SuperUser" did not constitute a promotion or new position; the role did not warrant any additional compensation; and once everybody had learned the software, the group "faded out" of existence.  J.A. 133.  _Cf._ _Terry_, 336 F.3d at 139 (failure to promote constitutes an adverse employment action (citing _Phillips v. Bowen_, 278 F.3d 103, 109 (2d Cir. 2002)).

Even if the "little bit more access" or "little bit more training" that SuperUsers had regarding the software was sufficiently material such that denial of SuperUser status amounted to an adverse action, it is undisputed that Preston _was_ asked by Heidi McLam, her direct supervisor, to become a SuperUser; additionally, Preston testified that she considered herself to be a SuperUser and trained other employees on the MediTech software.  Accordingly, Preston has not raised a genuine issue of fact as to whether she was

3

denied this status or these privileges.[1]  J.A. 369; see Br. of Appellant at 19.

   **2.   Failure to Accommodate & Hostile Work Environment**: In July 2011, Preston learned that she had a stress fracture in her foot.  She was required to wear a "boot"-style cast for ten weeks, and was put on "light duty," which meant that she could not transport patients in wheelchairs or stretchers.  Preston contends that the Hospital discriminated against her on the basis of disability by failing to provide a reasonable accommodation by providing transporters, and by creating a hostile work environment. These claims too fail for lack of an adverse employment action.[2]

   The record undisputedly establishes that other staff members were available to transport patients during Preston's weekday shifts; and when it was Preston's turn to work on a weekend, she would inform Al Lamptey, her supervisor, who would provide a transporter.  Preston

_____

   [1] In Preston's view, being on the MediTech team was "the same thing" as being a SuperUser.  However, to the extent that Preston separately challenges her failure to be placed on the MediTech implementation team in May 2010, when the Hospital first decided to purchase and implement the software, her claims are time-barred.  Preston filed charges with the Equal Employment Opportunity Commission ("EEOC") and Connecticut Commission on Human Rights and Opportunities ("CCHRO") on January 6, 2012; so she may not challenge under Title VII or CFEPA any alleged adverse actions that occurred prior to March 12, 2011.  See 42 U.S.C. § 2000e-5(e)(1) (charge must be filed with EEOC within 300 days of allegedly unlawful employment practice when charge is also filed with state or local agency); Conn. Gen. Stat. § 46a-82(f) (complaint must be filed with CCHRO within 180 days of challenged act of discrimination).

   [2] The district court held that Preston's foot injury did not satisfy the definition of disability under the ADA or CFEPA.  Because we affirm the district court's alternative holding (that there was neither a failure to accommodate nor a hostile work environment), we need not decide the question.

4

alleges that "[s]ometimes [she] did not have transportation help," Br. of Appellant at 8, but she does not identify any instance in which this occurred, see Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 310 (2d Cir. 2008) ("A party opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory . . . ."); and she does not contend that she was ever required to transport a patient in contravention of her restriction. Accordingly, Preston has raised no genuine issue of fact with respect to the Hospital's alleged failure to provide a reasonable accommodation.

Nor has Preston submitted evidence sufficient to show a hostile work environment,[3] i.e., that her workplace was "so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered." Desardouin v. City of Rochester, 708 F.3d 102, 105 (2d Cir. 2013) (quoting Alfano v. Costello, 294 F.3d 365, 373-74 (2d Cir. 2002)). Moreover, she does not challenge the district court's conclusion on this point, so any argument is waived. See Norton v. Sam's Club, 145 F.3d 114, 117-18 (2d Cir. 1998).

**3. Termination**: Preston contends that her termination in October 2011 was motivated by discrimination on the basis of her sex, marital status, and disability; and retaliation for complaints of prior discrimination.[4] The Hospital asserts that Preston was fired because she refused to work or arrange coverage for a mandatory weekend shift based on a rotating assignment schedule. Even assuming that Preston could establish her prima facie case as to any claim, we agree with the district court that she has not submitted evidence from which a reasonable jury could find that the proffered reason for the termination (which is undisputed) was pretext for discrimination or retaliation.

---

[3] We assume that a hostile work environment claim is cognizable under the ADA. See Giambattista v. Am. Airlines, Inc., 584 F. App'x 23, 25 & n.1 (2d Cir. 2014) (summary order).

[4] When deposed, however, Preston did not contend that her termination was retaliatory.

As the district court explained, Preston's claims of pretext "are rendered implausible by the undisputed fact that another full-time CAT Scan Technician, Michele Gore, was terminated the same day, by the same people, for failing to find coverage for the same weekend shift." Preston v. Bristol Hosp., No. 3:12-cv-1252(RNC), 2015 WL 1456764, at *8 (D. Conn. Mar. 30, 2015). Preston does not contend that Gore is a single mother or disabled, or that Gore ever complained of discriminatory treatment; instead, Preston contends that her refusal to work was justified while Gore's was not. But "evidence that an employer made a poor business judgment in discharging an employee generally is insufficient to establish a genuine issue of fact as to the credibility of the employer's reasons. . . . [T]he reasons tendered need not be well-advised, but merely truthful." Dister v. Cont'l Grp., Inc., 859 F.2d 1108, 1116 (2d Cir. 1988) (citation omitted); see also Delaney v. Bank of Am. Corp., 766 F.3d 163, 169 (2d Cir. 2014) ("While we must ensure that employers do not act in a discriminatory fashion, we do 'not sit as a super-personnel department that reexamines an entity's business decisions.'" (quoting Scaria v. Rubin, 117 F.3d 652, 655 (2d Cir. 1997))). What matters here is that "both women refused to work a required shift for a legally unprotected personal reason," and were terminated.[5][6] Preston, 2015 WL 1456764, at *8.

Preston asserts that the credibility of the Hospital's nondiscriminatory rationale is undermined by (1) "differing explanations" for her termination and (2) an alleged failure

---

[5] Of course, "it is discriminatory treatment of a given individual that matters." Brown v. Henderson, 257 F.3d 246, 253 (2d Cir. 2001). See Br. of Appellant at 43. The Hospital's similar treatment of Gore and Preston therefore undermines Preston's allegation that the proffered reason for *Preston's* termination was pretextual.

[6] Notwithstanding Preston's arguments to the contrary, she has not "provided evidence that a person outside Plaintiff's protected group [Donna Santopietro] was permitted to miss a [required] shift." Br. of Appellant at 45. It is undisputed that Santopietro was not subject to the mandatory weekend coverage rotation, because she worked part-time.

6

to follow its own written policies, which (according to Preston) require progressive discipline in all cases, and therefore bar immediate termination. Br. of Appellant at 39-42. But there is nothing inconsistent about the statements to which Preston points; they are all consistent with Preston being terminated for her refusal to work a required shift, knowing the consequences. And the discipline policy on its face does contemplate "immediate discharge, depending on the seriousness of the offense in the judgment of Management and consultation with Human Resources if needed." J.A. 396; see also id. 400.

For pretext, Preston also relies on comments allegedly made by Marie Marciano (a supervisor) and Shana Loitz (a co-worker) about Preston's status as a single parent in the context of Preston's failure to be placed on the MediTech team. The comments were not related to Preston's termination or proximate in time. Moreover, there is no evidence that Marciano or Loitz had any involvement in Preston's termination; the decision was made by the Hospital's Vice President of Human Resources, Jeanine Reckdenwald, in consultation with Lamptey and McLam. Therefore, the statements are not probative of the Hospital's motivation for that termination. See Henry v. Wyeth Pharm., Inc., 616 F.3d 134, 149 (2d Cir. 2010) (framework for determining whether comments are probative of bias).[7]

---

[7] Preston does not appear to contend that comments made by Lamptey regarding Preston's foot injury and need for a transporter can establish pretext. But to the extent that she does, they are also insufficiently probative. Preston testified that Lamptey stated: "What did you have to go and get it X-rayed for anyway"; "[w]ell, this is becoming a habit"; "[t]his is becoming a bad habit"; "[w]e can't afford it"; and, on an occasion Preston slipped and fell, "[c]an't you stay off the floor." J.A. 180-82, 322. The comments were not made in the context of Preston's termination, which occurred several weeks after Preston was back to full duty. Even if they were sufficient to raise an inference of discrimination for a prima facie case (which we do not decide), the lack of connection to Preston's termination (in time or context) renders them insufficient to raise a genuine dispute regarding pretext.

For the foregoing reasons, and finding no merit in Preston's other arguments, we hereby **AFFIRM** the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK