06-5605-cv
Aulicino v. New York City Dep't of Homeless Servs.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2008

(Argued:  November 19, 2008        Decided: September 8, 2009)

Docket No. 06-5605-cv

-------------------------------------

THOMAS A. AULICINO,

Plaintiff-Appellant,

- v. -

NEW YORK CITY DEPARTMENT OF HOMELESS SERVICES, and LINDA GIBBS as Commissioner of the Agency,

Defendants-Appellees.[*]

-------------------------------------

Before:   STRAUB, SACK, and WESLEY, Circuit Judges.

Appeal from a judgment of the United States District Court for the Eastern District of New York.  The district court (Sterling Johnson, Jr., Judge), adopting a report and recommendation by Magistrate Judge Lois Bloom, granted the defendants' motion for summary judgment in this employment discrimination action.  We vacate the dismissal of the plaintiff's failure to promote claim and remand that cause for trial to resolve genuine issues of material fact.  We also vacate the dismissal of the plaintiff's hostile work environment claim because, we conclude, the district court failed to consider the

_____

[*] The Clerk of the Court is respectfully directed to amend the official caption to conform to this one.

evidence supporting that claim in the light most favorable to the plaintiff. That cause is therefore remanded for reconsideration.

VACATED in part and REMANDED.

Arthur Z. Schwartz, Schwartz, Lichten & Bright, P.C., New York, NY, for Appellant.

Fay Ng (Pamela Seider Dolgow, Eric Eichenholtz, Michael A. Cardozo, Corporation Counsel of the City of New York, of counsel), New York, NY, for Appellees.

SACK, Circuit Judge:

The plaintiff, Thomas Aulicino, appeals from a judgment of the United States District Court for the Eastern District of New York. Aulicino is a Motor Vehicle Operator ("MVO") at the Hinsdale Depot of the New York City Department of Homeless Services ("DHS"). He claims that he was denied a promotion at DHS because he is white, was subjected to a discriminatory hostile work environment, and was retaliated against for engaging in protected activity. The district court (Sterling Johnson, Jr., Judge), adopting a report and recommendation by Magistrate Judge Lois Bloom over Aulicino's objections, granted the defendants' motion for summary judgment and dismissed Aulicino's complaint in its entirety.

In our view, the failure to promote and hostile work environment claims should not have been dismissed. We conclude that the record reflects genuine issues of material fact with respect to the failure to promote claim. We therefore vacate the dismissal of that claim and remand the cause for trial. We also

2

think the district court, in applying the legal standard governing hostile work environment claims, failed to consider the record evidence in the light most favorable to the plaintiff, as it was required to do. We therefore vacate and remand the complaint with respect to that cause of action for reconsideration.[1]

**BACKGROUND**

Evidence of Derogatory Racial Comments

According to Aulicino's deposition testimony, Frank John, an African-American who was a fleet coordinator at the Hinsdale Depot beginning in November 2001, made several "nasty" and "harassing" "racial comments" to or about Aulicino. Aulicino Dep. 76, 88. For example, John told Aulicino that "it was all right for [a DHS client] to call [Aulicino] a white mother fuck" and that "[Aulicino] deserved it." Id. at 136; see also id. at 76 (same). In the same encounter, according to Aulicino, John threatened to withhold Aulicino's pay for that day, though he did not follow up on the threat. See id. at 136-37. On another occasion, John remarked to Aulicino that "white people are lazy." Id. at 76. And on another, John asked a white colleague why he and Aulicino "all take off the same days . . . like there was some sort of white conspiracy." Id. at 88. On still another, Aulicino was told by one of his supervisors, Gary Brown, that

---

[1] The plaintiff has not appealed from the denial of his retaliation claim.

John called him a "white fuck" and had threatened to "get" him. Id. at 154-56.[2]

It is not clear from Aulicino's testimony or other material in the record when the statements in question were allegedly made. Aulicino's second amended complaint and brief on appeal assert that they occurred in a period between late December 2001 and September 2002. See Amended Complaint[3] ¶¶ 19-40; Appellant's Br. 5-8.

Aulicino also testified that his African-American supervisor, Larry Singleton, made "the sort of comments Frank John makes." Aulicino Dep. 169. Singleton became Aulicino's supervisor several months before Aulicino's deposition was taken in August 2004. See id. at 27. The excerpted deposition transcript in the record does not specify any particular derogatory comments made by Singleton.

In an affidavit dated March 21, 2006, and submitted in opposition to the defendants' motion for summary judgment, however, Aulicino testifies to several recent examples of derogatory comments made by Singleton, all of which, he says, occurred during the pendency of this action. According to the affidavit, on January 7, 2005, Singleton handed him a copy of an old union contract and grievance form. When Aulicino asked why

---

[2] John denies that he made derogatory racial comments to or about Aulicino.

[3] The pleading entitled "Amended Complaint" is in fact Aulicino's second amended pleading.

4

he had done so, Singleton "mentioned" the instant lawsuit "in an aggressive and inappropriate manner," as he had several times before. Aulicino Aff. ¶ 5. According to the affidavit, Aulicino told Singleton to stop harassing him and threatened to file a complaint about the incident. At that point, according to the affidavit, Singleton "stated that he [Singleton] was an ex-felon." Id. Aulicino interpreted that as a threat that he would be "assault[ed]" if he were to file such a complaint. Id. The affidavit also asserts that on April 27, 2005, Singleton "confronted" Aulicino saying, "Go back to Bensonhurst and tell everyone that you report to a black man who is making your life miserable." Id. ¶ 2. Aulicino stated in his affidavit that he thought the comment was "racist" and that he told Singleton that "he was creating a hostile work environment." Id. ¶ 3. Singleton replied, "I'll show you what a hostile work environment is." Id. ¶ 4.

The affidavit also alleges that in July 2005, Singleton discussed a book he displayed on his desk "titled Black and White: Separate, Hostile, and Unequal" with African-American colleagues while pointing at Aulicino and laughing. Id. ¶ 6. According to Aulicino, Singleton also commented in Aulicino's presence that a lynching of an African-American man could have been avoided if the man's friend "had not given the man up to white people" and that "the moral of the story was that black people need to stick together against white people." Id. ¶ 7.

Overall, Aulicino swore, the racial remarks by John and Singleton rendered Aulicino "short fused." Aulicino Dep. at 169. Aulicino has contemplated an attempt to transfer out of the Hinsdale Depot, but has not done so because he does not "know where else to go," in light of what he characterizes as his "very limited" choices. Id.

### The Denial of a Promotion

On May 13, 2002, DHS posted a job opening for a Motor Vehicle Supervisor ("MVS") position at the Hinsdale Depot. The vacancy notice specified these qualifications:

**Preferred Skills:**

1. One year of permanent service in the title of Motor Vehicle Operator.

2. One year of full-time experience in Motor Vehicle Dispatching, and

3. A valid NYS Class B Motor Vehicle Driver License

. . . .

**MINIMUM QUALIFICATIONS**

1. One year of permanent service in the title of Motor Vehicle Operator; or

2. One year of full-time experience in motor vehicle dispatching.

License Requirement

A Motor Vehicle Driver License valid in the State of New York. For appointment to certain positions, possession of a Class B Commercial Driver License [("CDL")] valid in the State of New York may be required. There may be certain age requirements to obtain this license. Employees must maintain the Class B Commercial Driver License during their employment.

6

City of New York, Department of Homeless Services, Job Vacancy Notice, May 13, 2002 ("MVS Posting"), at 1. Aulicino submitted his application for the position on May 22, 2002, and he was interviewed by John on June 13, 2002.

Aulicino, according to his deposition testimony, found the interview "very unbelievable" because it "seemed like [John] was trying to discourage [him] and disqualify [him] all at the same time from taking the job" by telling Aulicino that the position was for a later shift "and that [John] knew [Aulicino] didn't want to change shifts." When Aulicino "tried to tell [John] about [his dispatching] experience [John] stopped [him] and said that he knew all about it and that was the end of the conversation." Aulicino Dep. 108-09. John also "asked [Aulicino] if [he] had a CDL license [sic]." Aulicino did not, but he said to John that the CDL "was not an official requirement," in light of the fact that motor vehicle supervisors "basically . . . don't drive." Aulicino also volunteered that "if it was necessary [he] would upgrade [his] license." Id. at 109-10.

John declined to promote Aulicino. Aulicino testified that one of his supervisors, Sterling Ferguson, later told Aulicino that he had heard John "make derogatory comments about [Aulicino]" in connection with his application, "saying that he wouldn't hire [Aulicino]," referring to Aulicino as "a white fuck." Id. at 96-97; see also id. at 100 ("[Ferguson] told me about stuff that [John] said to . . . him when he spoke to [John]

7

in regard to [whether] I was qualified for the position I was applying for and [John] responded by saying something to the [effect of] I wouldn't hire that white fuck.").

John testified in his deposition that he rejected Aulicino for the MVS position because "Mr. Aulicino didn't have the appropriate driver's license" -- he had "a class E license," and, John thought, the job vacancy posting required "a valid New York State Class B license." John Dep. 109. John also testified that "looking at Mr. Aulicino's record, it wasn't that good, it wasn't good." Id. at 145. And indeed it appears that although Aulicino's performance was consistently rated "good," he was "written up" several times for misconduct on the job.

Joseph Johnson, an African-American, was awarded the MVS position. At the time, Johnson had a commercial learner's permit but no Class B license, some "fill-in" dispatching experience, Johnson Dep. 64, and more than one year of experience as an MVO.

Procedural History

On January 7, 2003, Aulicino filed a pro se complaint with the EEOC. He received a "right to sue" letter from the agency on March 1, 2003. He initiated this action pro se on May 13, 2003, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., by completing and filing a form complaint alleging discrimination and retaliation on the basis of his race, color, and national origin. Aulicino checked a line on the form to reflect his assertion that the defendants were "still

committing these acts against [him]." On August 4, 2003, shortly after pretrial matters in the action had been referred to Magistrate Judge Bloom, Aulicino, continuing to act pro se, filed an amended form complaint adding John as a defendant.

Discovery ensued. On March 8, 2004, counsel retained by Aulicino's union filed a notice of appearance on behalf of Aulicino. The parties subsequently agreed that Aulicino's complaint would be amended and discovery extended.

The second amended complaint, the operative complaint for present purposes, added Linda Gibbs, the Commissioner of DHS, as a defendant, and dismissed the complaint against Frank John. It also set forth Aulicino's factual allegations in greater detail, and it proffered the New York City and State Human Rights Laws as bases for relief in addition to Title VII. After several further extensions, the magistrate judge ordered that discovery would be closed on July 29, 2005. In a status conference, Aulicino stipulated to the dismissal of his claims against Gibbs, inasmuch as Title VII does not provide for individual liability. The parties also stipulated to substitute the City of New York for DHS, and the magistrate judge set a schedule for the City's proposed motion for summary judgment.[4]

On September 20, 2005, Aulicino received new counsel through his union. After two extensions, the City served its

---

[4] It does not appear that Gibbs was formally dismissed from this action, since Aulicino agreed to but did not file a written stipulation of dismissal by October 18, 2005. Nor does it appear that the City was ever formally substituted for DHS.

motion for summary judgment on January 23, 2006.  Aulicino's new counsel opposed it by, inter alia, submitting the Aulicino affidavit dated March 21, 2006, referred to above, in which he specifies derogatory comments made by Singleton after the filing of the second amended complaint but before the close of discovery.

In a report and recommendation dated August 31, 2006 (the "R&R"), the magistrate judge recommended that the City's motion be granted in its entirety.  In her view, Aulicino's failure to promote claim was insufficient because the record lacked evidence that Aulicino was qualified for the MVS position or that the denial of the promotion was discriminatory.  The R&R reflects the magistrate judge's conclusion that the defendants' stated reasons for not promoting Aulicino were legitimate and nondiscriminatory, and that Aulicino had failed to produce evidence that those reasons were pretextual.  See R&R 8-12.

The R&R recommended dismissing the hostile work environment claim because, in the magistrate judge's view, John and Singleton's comments were "isolated and discrete" and had not interfered with Aulicino's job performance or responsibilities.  Id. at 14.  The R&R further recommended dismissing the retaliation claim for want of an adverse employment action.  See id. at 15.

Aulicino submitted no objections to the R&R, and the district court initially adopted it in full.  But the district court subsequently granted Aulicino's application to submit

10

belated objections inasmuch as their lateness was caused by problems counsel encountered with the court's electronic filing system. The court nonetheless concluded that the objections were without merit, affirming its earlier dismissal of the complaint.

Aulicino, acting pro se, filed a notice of appeal. Through what we understand to be yet a fourth lawyer, he pursues this appeal from the dismissal of his failure to promote and hostile work environment claims. As noted, he has not sought to appeal from the dismissal as it relates to his retaliation claim.

**DISCUSSION**

I.   Standard of Review

We review de novo the grant of a motion for summary judgment. Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008). Such a judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A dispute about a 'genuine issue' exists . . . where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer, 524 F.3d at 163. The court must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" Id. (quoting Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003)).

11

Aulicino seeks relief under Title VII and the New York State and New York City Human Rights Laws. Inasmuch as we are able to resolve this matter on federal grounds, we need not and do not address the reach of the City or State statutes.

II. The Failure To Promote Claim

A. The Applicable Legal Standard

"At the summary-judgment stage . . . Title VII claims are ordinarily analyzed under the familiar burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny." Mathirampuzha v. Potter, 548 F.3d 70, 78 (2d Cir. 2008).

At the first stage under that framework, the plaintiff bears the burden of establishing a prima facie case.

> To establish a prima facie case of a discriminatory failure to promote, a Title VII plaintiff must ordinarily demonstrate that: (1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications.

Petrosino v. Bell Atl., 385 F.3d 210, 226 (2d Cir. 2004) (quoting Brown v. Coach Stores, Inc., 163 F.3d 706, 709 (2d Cir. 1998) (internal quotation marks omitted)). In all cases, for the plaintiff to avoid an adverse judgment, there must be proof that the plaintiff "was rejected under circumstances which give rise to an inference of unlawful discrimination." Id. at 710 (internal quotation marks omitted).

12

If the plaintiff carries that burden, "the burden shifts to the defendant, which is required to offer a legitimate, non-discriminatory rationale for its actions." Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003). If the defendant meets this second burden, "to defeat summary judgment . . . the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." Id. (internal quotation marks omitted).

B. Application of the Standard

We conclude that Aulicino has made out a prima facie case for his failure to promote claim. There is no dispute that Aulicino is a member of a protected class, i.e., a "race" or "color,"[5] that he applied for an MVS position that was posted within DHS, that he was denied the position, or that the position

---

[5] Aulicino's papers make no reference to national origin discrimination; we therefore take his claim to focus solely on color and race discrimination. With respect to those classes, we do not decide whether, as some courts of appeals have concluded, the Title VII plaintiff who alleges discrimination on the basis that he is white, or "Caucasian," must proffer evidence of "background circumstances" reflecting that the defendant is "that unusual employer who discriminates against the majority." Parker v. Baltimore & Ohio R.R. Co., 652 F.2d 1012, 1017 (D.C. Cir. 1981). But see Iadimarco v. Runyon, 190 F.3d 151, 160 (3d Cir. 1999) (rejecting "background circumstances" requirement). The defendants do not argue that Aulicino must do so, and, in any event, as the following discussion makes clear, there is sufficient evidence from which a rational jury could conclude that both John and Singleton harbored discriminatory animus against white persons, facts that constitute "background circumstances" reflecting that the defendant is "that unusual employer who discriminates against the majority."

13

remained open until it was given to Johnson.  The issue is whether the magistrate judge was correct to conclude as a matter of law -- and whether the district judge was correct to uphold the conclusion -- that Aulicino was unqualified for the position and that there was no proof of discriminatory intent.  We think those conclusions could not be made as a matter of law on the record before the district court.

Viewing the record evidence in the light most favorable to Aulicino, as we must, Beyer, 524 F.3d at 163, a rational jury could find that Aulicino was qualified for the MVS position.  The necessary qualifications, as reflected in the job posting, were (1) either "[o]ne year of permanent service in the title of Motor Vehicle Operator" or "[o]ne year of full-time experience in motor vehicle dispatching," (2) "[a] Motor Vehicle Driver License valid in the State of New York," and possibly (3) "possession of a Class B Commercial Drivers License valid in the State of New York."  MVS Posting 1.  There is evidence from which a rational jury could conclude that Aulicino had more than one year of permanent service as an MVO, see Resume of Thomas A. Aulicino 1 (reflecting employment as an MVO from "September 1993 - Present"), and a valid New York driver's license, see John Dep. 109 ("[Aulicino] has a class E license . . . .").  Aulicino therefore met his burden to present evidence on that element of his prima facie case.

The R&R rightly points out that Aulicino "did not have at least one year of full-time experience as a motor vehicle

14

dispatcher," nor "the Class B [commercial drivers] license set forth in the job posting." R&R 8-9. But the former was not necessary, in light of Aulicino's experience as an MVO, and as to the latter, the job posting only notes that it "may be required." MVS Posting 1. And even if those qualifications could be interpreted as minimum qualifications from the job posting, a rational jury could nonetheless conclude that DHS did not in practice consider them part of the "basic eligibility for the position at issue," Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 91-92 (2d Cir. 2001), cert. denied, 534 U.S. 951 (2001). There is evidence that Johnson -- the African-American who was hired for the position -- also lacked dispatching experience and a CDL. Johnson testified that he had only "fill-in" experience as a dispatcher, that "it was never . . . a permanent title." Johnson Dep. 64. And everyone appears to agree that Johnson had only a Class B commercial learner's permit, not a Class B CDL.

Again viewing the evidence in the light most favorable to the plaintiff, we also conclude that a rational jury could infer discriminatory intent in the denial of the promotion. The magistrate judge ruled in the R&R that John's comment to Ferguson that "he wouldn't hire that white fuck," referring to Aulicino, did not support an inference of discrimination because it is inadmissible hearsay. See R&R 9. That may be so, insofar as the statement by Ferguson was elicited through Aulicino's testimony, and insofar as Aulicino's report of the statement is offered to

15

prove what John said.[6] But irrespective of the existence of that alleged comment and others that were reported to Aulicino by third parties, there remain two specific racially derogatory comments by John for which there is direct evidence: John's comment to Aulicino that Aulicino "deserved" to be called "a white mother fuck" by a DHS client, Aulicino Dep. 136, and his comment to Aulicino that "white people are lazy," id. at 76. We think a reasonable jury could infer from these comments -- as to which there is no admissibility dispute -- that John's hostility toward Aulicino was race-based, and that that hostility played a role in the denial of the promotion.[7]

Accordingly, we conclude that Aulicino has made out a prima facie case of race discrimination on his failure to promote claim. In light of the racially derogatory comments John made to Aulicino, we also conclude that a rational factfinder could find the defendant's non-discriminatory reasons for failing to promote Aulicino to be pretextual. Because we think the question whether Aulicino was denied a promotion on the basis of race is a genuine

---

[6] To the extent the R&R found this statement to Aulicino inadmissible to prove what John said (and thus John's intent) it is not immediately clear why the R&R considered the statement, along with another third-party statement about another derogatory comment by John, as evidence of a hostile work environment. See Section III.B infra. More clarity on the issue is not necessary for resolution of the failure to promote claim, however.

[7] The R&R also reflects the magistrate judge's view that the failure to promote claim "is undercut by the fact that three of the African American candidates who were interviewed for the job were likewise not selected for the position." R&R 10. This goes to the weight, not to the sufficiency, of the evidence in support of the failure to promote claim.

16

issue for trial, we vacate the dismissal of the failure to promote claim and remand that cause for trial.

### III.   The Hostile Work Environment Claim

#### A.   The Applicable Legal Standard

"[T]o survive summary judgment on a claim of hostile work environment harassment, a plaintiff must produce evidence that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment.'"  Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).[8]

Whether the challenged conduct is sufficiently severe or pervasive "depends on the totality of the circumstances."  Id. The Supreme Court in Harris "established a non-exclusive list of factors," Richardson v. N.Y. State Dep't of Corr. Serv., 180 F.3d 426, 437 (2d Cir. 1999), abrogated on other grounds, Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006), to consider in this regard: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating, or a 'mere offensive utterance'; (4) whether the conduct unreasonably interfered with plaintiff's

---

[8]   The plaintiff must also produce evidence that subjectively, he thought the workplace environment was abusive. See Harris, 510 U.S. at 21-22.  The parties do not dispute this element of the claim on appeal.

17

work; and (5) what psychological harm, if any, resulted." Id. (quoting Harris, 510 U.S. at 23).

Our case law treats the first two of these factors -- the frequency and the severity of the misconduct -- as the principal focus of the analysis; the last three factors are specific considerations within the severity inquiry. Core hostile work environment cases involve misconduct that is both frequent and severe, for example, when a supervisor utters "blatant racial epithets on a regular if not constant basis" and behaves in a physically threatening manner. Cruz, 202 F.3d at 571-72. But an employer's motion for summary judgment must be denied if the claimed misconduct ranks sufficiently highly on either axis. See Richardson, 180 F.3d at 440 ("[A] work environment may be actionable if the conduct there is either so severe or so pervasive as to alter the working conditions of a reasonable employee." (emphasis in original)); id. ("[E]ven a single episode of harassment, if severe enough, can establish a hostile work environment. . . ." (internal quotation marks omitted)); Torres v. Pisano, 116 F.3d 625, 632 (2d Cir. 1997) ("[If] the harassment is of such quality or quantity that a reasonable employee would find the conditions of her environment altered for the worse, it is actionable under Title VII . . . ." (emphasis added)).

"For racist comments, slurs, and jokes to constitute a hostile work environment," however, "there must be more than a few isolated incidents of racial enmity." Schwapp v. Town of

18

_Avon_, 118 F.3d 106, 110-11 (2d Cir. 1997) (internal quotation marks and citation omitted); see also Kotcher v. Rosa & Sullivan Appliance Ctr., Inc., 957 F.2d 59, 62 (2d Cir. 1992). Overall, "the quantity, frequency, and severity of th[e] slurs [at issue]" are to be "considered cumulatively in order to obtain a realistic view of the work environment." _Schwapp_, 118 F.3d at 110-11 (internal quotation marks and citation omitted).

B. Application of the Standard

The magistrate judge's R&R recommended that the hostile work environment claim be dismissed. Assessing the frequency of the comments of John and Singleton, the magistrate judge noted that they collectively "occurred over a five-year time period." R&R 14. With that observation, and citing Quinn v. Green Tree Credit Corp., 159 F.3d 759 (2d Cir. 1998), the magistrate judge concluded that the comments, while "unfortunate," were too "isolated and discrete" to be actionable. _Id._ The magistrate judge then went on to assess the comments' severity:

> Plaintiff . . . fails to establish that defendants' conduct interfered with his job performance or responsibilities. . . . [P]laintiff admits that his work hours were never altered. Plaintiff also acknowledges that he got along with his fellow employees on the job.

_Id._ (citations omitted). In our view, this analysis is unpersuasive inasmuch as it does not appear to us to consider the record evidence in the light most favorable to the plaintiff, as it is required to do.

19

1. Frequency. The evidence supporting Aulicino's hostile work environment claim reflects two sets of derogatory comments by two different people during two different periods of time. The specific comments by John in the record are alleged to have occurred between December 2001 and September 2002. The specific comments by Singleton are alleged to have occurred some years later, between January and July 2005.

Correctly, the magistrate judge looked to the frequency of these remarks. And a review of the R&R discloses that she considered them "cumulatively" to obtain a "realistic view" of the workplace environment. See Schwapp, 118 F.3d at 110-11. But she appears to have done so by calculating the length of time from the first specific comment by John, which occurred during one period of time, to the last specific comment by Singleton, which occurred several years later, and then asking whether eight comments in that period of time constituted sufficient "frequency." See R&R 12-13 (listing four comments by John and four by Singleton); id. at 14 ("The incidents plaintiff describes occurred over a five-year time period. They are unfortunate, but they are isolated and discrete incidents."). We acknowledge that there are different ways in which sets of hostile comments might be considered "cumulatively," but we think the R&R's approach improperly draws inferences against Aulicino rather than for him as required.

First, the R&R takes into consideration two comments by John reported by third parties to Aulicino, see R&R 12

20

("[P]laintiff alleges that John questioned one of plaintiff's Caucasian co-workers 'why all the white people take the same days off?'"); id. at 13 ("[P]laintiff claims that another supervisor, Sterling Ferguson, overheard John stating that 'he would not hire that white fuck' referring to plaintiff."), but fails to mention a third: John's threat to Gary Brown that he would "get" Aulicino, referring to Aulicino as a "white fuck." Aulicino Dep. 154-56. The omission of this threat was detrimental to Aulicino's claim.[9]

Second, the calculation in the R&R of the relevant time period in which the alleged derogatory comments were made appears to have been analyzed in the light least, rather than most, favorable to the plaintiff. The magistrate judge viewed the comments as having been made "over a five-year time period," R&R 14, even though the first comment it mentions dates from December 2001 and the last was in July 2005, less than four years later, id. at 12-14. In addition, the "cumulative" assessment contained in the R&R includes a 26-month period between the last comment by John and the first comment by Singleton. We think that, in order to take the facts of this case in the light most favorable to

---

[9] As we have noted, the R&R quotes the comment by Ferguson in its hostile work environment analysis, even though in its failure to promote analysis it ruled that comment inadmissible as proof of what John said. See n.6 supra. To the extent the admissibility of this and other comments by third parties about what John said remains an issue -- perhaps relating to double hearsay -- for the court on remand of the hostile work environment claim, we offer the observation that such statements are not hearsay if the declarants are the agents of party-opponents for Rule 801(d)(2)(D) purposes.

Aulicino, the court should have discounted from its analysis, if not altogether disregarded, the intervening period between comments by one supervisor and comments by another.  In our view, a "realistic" picture of the hostile workplace alleged by Aulicino is not obtained by focusing on a two-year stretch of time in which he fails to allege acts of hostility, and using that time to dilute the strength of his claims based on two discrete periods of more intense harassment.

Third, the court's reliance on Quinn v. Green Tree Credit Corp., 159 F.3d 759 (2d Cir. 1998), for the proposition that "thirty episodes occurring over a seven-year period d[o] not constitute a hostile work environment," R&R 14 (emphasis added), appears to us to have been misplaced.  The facts on which the Quinn opinion was based undercut that reading.  See Quinn, 159 F.3d at 768 ("Quinn did . . . make two allegations . . . that appear to be timely . . . .  Quinn's hostile work environment claim . . . rests on these two alleged incidents."  (emphasis added)).  More importantly, whether the comments in this case are sufficiently frequent to be actionable may not be determined by extrapolation inasmuch as the applicable legal standard "is not, and by its nature cannot be, a mathematically precise test." Harris, 510 U.S. at 22.  Indeed, "even a single episode of harassment, if severe enough, can establish a hostile work environment." Richardson, 180 F.3d at 437 (citation and internal quotation marks omitted).  On remand, the court therefore ought not to treat Quinn as providing a precise standard for the number

22

of hostile incidents over a particular time span so as to give rise to a viable hostile work environment claim.

2. <u>Severity.</u> We also think the magistrate judge should have considered, but did not, the severity of John and Singleton's comments in the light most favorable to Aulicino, in two respects.

First, the R&R omits to report that two of the comments may be inferred to be physical threats: Singleton's remark to Aulicino that he was an "ex-felon," which Aulicino took to be a threat that Singleton would "assault" him, Aulicino Aff. ¶ 5, and John's threat to "get" Aulicino, Aulicino Dep. 154-56.

Second, the R&R concludes that Aulicino "fails to establish that defendants' conduct interfered with his job performance or responsibilities," R&R 14, but omits mention of Aulicino's testimony that he has contemplated transferring out of the Hinsdale Depot, and has not done so only because he does not yet know "where else to go" in light of his "very limited" choices. Aulicino Dep. 169.

This evidence is material. <u>See</u> <u>Richardson</u>, 180 F.3d at 437 (requiring courts to consider "whether the conduct was physically threatening or humiliating, or a mere offensive utterance" and whether it caused "unreasonabl[e] interfer[ence] with [the] plaintiff's work" (internal quotation marks omitted)). The magistrate judge should consider it on remand.[10]

_____

[10] The parties do not address whether racial comments to or about a white person should be judged as to their "severity" in the same way that racial slurs used about racial minorities

23

## C. Disposition of the Claim

Although our review is <u>de novo</u> and we might therefore, if we thought it best, decide the merits of the summary judgment motion as to the hostile work environment claim now ourselves, we think it better to remand the matter to the district court for its reconsideration in accordance with these views.

> Although we have repeatedly observed, in words or substance, that we review a grant of summary judgment de novo applying the same standard as the district court, that does not mean that it is our function to decide motions for summary judgment in the first instance. We are dependent on the district court to identify and sort out the issues on such motions, to examine and analyze them, and to apply the law to the facts accepted by the court for purposes of the motion. We are entitled to the benefit of the district court's judgment, which is always helpful and usually persuasive.

<u>Beckford v. Portuondo</u>, 234 F.3d 128, 130 (2d Cir. 2000) (per curiam) (citation and internal quotation marks omitted).

**CONCLUSION**

We have considered the defendants' other arguments in support of the judgment below, insofar as they have been appealed, and find them to be without merit. For the foregoing reasons, the dismissal of the failure to promote claim is vacated and the claim remanded for trial. The dismissal of the hostile

---

should be assessed. <u>See</u> <u>Rodgers v. Western-Southern Life Ins.</u> <u>Co.</u>, 12 F.3d 668, 675 (7th Cir. 1993) ("Perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as 'nigger' by a supervisor in the presence of his subordinates." (internal quotation marks and citation omitted)). We therefore do not reach the issue.

24

work environment claim is vacated and remanded for reconsideration.