DEARIE, District Judge
This insurance coverage dispute arises in the aftermath of Hurricane Sandy and involves damage sustained by a shopping center during the storm. Defendants Continental Casualty Company ("Continental") and Chubb Custom Insurance Company ("Chubb") denied coverage. The owner of the shopping center, 7001 E. 71st Street LLC, sues for breach of the insurance policies. Defendants move for summary judgment. The Court concludes that because Continental's policy excluded coverage for damage caused by wind and flooding, and that the damage to electrical equipment insured by Continental was at least partially attributable to these hazards, Continental's policy excludes coverage. As such, Continental's motion for summary judgment is granted. Chubb's policy, on the other hand, excludes coverage for flooding but does not exclude coverage for wind or rainwater. Because a factfinder could reasonably attribute some damage solely to a covered hazard, there are lingering issues of fact that make summary judgment inappropriate. Chubb's motion for summary judgment is therefore denied.
BACKGROUND
A. Hurricane Sandy and the Events Underlying the Dispute
Hurricane Sandy made landfall in New York and New Jersey on October 29, 2012, as a Category 2 hurricane and wrought destruction across much of the eastern seaboard. Among the properties affected was a single-story shopping center located at 7001 East 71st Street in Brooklyn, New York ("7001 E. 71st Street" or "the shopping center"), which sustained extensive wind and water damage from the storm. Much of the basement was flooded, and *66 parts of the roof, ceiling, and walls, including electrical equipment inside the walls, were inundated with water. The shopping center was insured by various insurance policies, including a $3 million commercial property policy issued by Chubb that insured the building itself (the "Chubb Policy"), and a $5 million equipment policy issued by Continental that insured equipment in the building, including electrical equipment inside the walls and in the basement of the shopping center (the "Continental Policy").
Plaintiff filed claims for property damage and lost profits, asserting that the damage was caused by rainwater entering the building through openings in the roof created by the storm. Defendants denied coverage, averring that the losses were caused primarily by flooding, which both policies exclude.
B. Procedural History
Plaintiff filed suit against Continental on February 4, 2013, and a separate suit against Chubb on May 15, 2013, alleging breach of the insurance contracts. See 13-cv-638, ECF No. 1; 13-cv-2898, ECF No. 1. After discovery concluded, the parties filed motions pursuant to Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), to preclude the testimony of certain expert witnesses. Plaintiff sought to bar the testimony of Chubb's environmental expert, Eduard Eichen, and Continental's electrical engineering expert, John DiGrande. See 13-cv-638, ECF No. 80. Defendants sought to bar the testimony of plaintiff's engineering expert, Joel Silverman, and plaintiff's damages expert, Joel Miele. See 13-cv-638, ECF No. 81; 13-cv-2898, ECF No. 67. Chubb also moved for sanctions against plaintiff for spoliation of evidence due to plaintiff's removal of the shopping center's roof and partial demolition of the building in 2014. See 13-cv-2898, ECF No. 67. The Court granted defendants' motion to exclude the testimony of Joe Miele because Miele's proposed damages calculation provided a raw estimate of the costs to repair the shopping center but did not provide any explanation as to how he arrived at the estimate. See Westrick Aff. Ex. M, 4:14-18, 13-cv-2898, ECF No. 78-16. The other motions were denied. See 13-cv-638, Electronic Order dated January 8, 2016; 13-cv-2898, Electronic Order dated January 8, 2016.
Defendants now move for summary judgment. Defendants both cite their respective policies' exclusions for flooding, and Continental also points to the exclusions in its policy for wind, corrosion and fire. Chubb also argues that plaintiff cannot prove that rainwater caused damage and cannot show the cost to repair the shopping center or the cost of plaintiff's business interruption loss.
C. Witness Reports and Testimony
The parties submitted various expert (and lay) reports and testimony. Those relevant to this opinion are briefly summarized below.
a. The Plaintiff's Proof
i. John Martone and Timothy Drew
Plaintiffs submitted a report prepared by John Martone and Timothy Drew, see Donovan Aff. Ex. J, 13-cv-638, ECF No. 90-12, and the transcripts of Drew's deposition, see id. Ex. K, 13-cv-638, ECF No. 90-13 ("Drew Tr."), and Martone's deposition. See id. Ex. M, 13-cv-638, ECF No. 90-15 ("Martone Tr."). Martone is vice president of a commercial roofing company in New York and Drew is a professional roofer who inspected the roof of the shopping center before and after Hurricane Sandy. Drew testified that the roof was in good repair prior to Sandy, but that after *67 the storm the roof membrane was split in places and had tom away from the perimeter walls. Drew Tr. at 88:11-89:25. Drew testified that the roof damage could only have been caused by high winds of the kind that occurred during Sandy. Id. at 90:2-92:4. Martone similarly testified that, though he did not personally inspect the roof, the damage in the photographs taken by Drew was consistent with wind damage he had observed in other cases. Martone Tr. at 40:21-41:3.
ii. Joel Silverman
Joel M. Silverman is a professional engineer and expert witness for plaintiff. Silverman conducted several inspections of 7001 E. 71st Street after Hurricane Sandy, and submitted a report of his findings, see Donovan Aff. Ex. I, 13-cv-638, ECF No. 90-11 ("Silverman Report"), and a supplemental report, see id. Ex. R, 13-cv-638, ECF No. 90-20 ("Supp. Silverman Report"). Silverman was also deposed twice. See id. Ex. N., 13-cv-638, ECF No. 90-16 ("Silverman Tr."). Silverman testified that he observed holes in the roof membrane of the shopping center and that parts of the membrane had become detached from the perimeter walls of the roof. Silverman Tr. 94:1-99:2. He noted that there was standing water on the roof a number of days after Hurricane Sandy because the roof was no longer draining properly. Id. Silverman observed extensive water damage to the interior of the shopping center from rainwater flowing through holes in the roof and into the building's wall cavities. Silverman Report, at 2-5; Supp. Silverman Report, at 1-2. Silverman reached this conclusion based on the high humidity level on the first floor of the shopping center and vertical streaks of dirt left on the interior walls by water trickling down from the ceiling. Silverman Report, at 2; Silverman Tr. at 136:10-23; 162:20-163:4.
Silverman's reports were provided to a commercial construction company, Precision Construction Enterprises Corp. ("Precision"), which estimated the cost for repairs to the shopping center at $14,276,784.37. See Donovan Aff. Ex. S, ECF No. 90-21. Precision did not view the property, but based the estimate solely on Silverman's report.
b. The Defendants' Proof
i. Richard Vivenzio
Richard Vivenzio is a Director for Navigant Global Construction hired by Continental as an expert witness. Vivenzio testified that he reviewed all of the evidence submitted in the case and visited the shopping center to inspect the damage. See Vivenzio Aff., Ex. 1, 13-cv-638, ECF No. 89-14. Vivenzio concluded that the damage to the basement of the shopping center was primarily the result of flooding. Id. at 6. In Vivenzio's opinion, the amount of rain that fell in the vicinity of the shopping center during Hurricane Sandy would not have been enough to cause the damage he observed and that flooding must therefore be its primary cause. Id.
DISCUSSION
Summary judgment is appropriate "only if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' " Ramos v. Baldor Specialty Foods, Inc., 687 F.3d 554, 558 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(a) ). Courts are "limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994). In deciding whether summary judgment is warranted, the Court must "resolve all ambiguities and draw all reasonable inferences against the movant." Delaney v. Bank of Am. Corp., 766 F.3d 163, 167 (2d Cir. 2014) (quoting *68 Aulicino v. N.Y.C. Dep't of Homeless Servs., 580 F.3d 73, 79-80 (2d Cir. 2009) ).
"New York insurance law provides that an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract." Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co., 472 F.3d 33, 42 (2d Cir. 2006) (internal quotation and citation omitted). "When the provisions are unambiguous and understandable, courts are to enforce them as written." Id.
Both policies unambiguously exclude coverage for flood damage, and the Continental Policy also excludes coverage for wind damage. Because the items insured by the Continental Policy were all damaged as a result of an excluded hazard, the Continental Policy does not cover damages sustained by plaintiff. The Chubb Policy, on the other hand, does not necessarily exclude all damage because a jury could find that at least some of the damage to the shopping center is directly attributable to a covered hazard.
A. Coverage Under the Insurance Policies
There is no dispute that the storm surge and subsequent flooding caused water damage in the basement of the shopping center. See Donovan Aff. Ex. G, ECF No. 90-9; Id. Ex. H, ECF No. 90-10. Plaintiff concedes that damage caused by flooding is not covered by either policy. See Pl. Mem. Opp. at 2, 13-cv-2898, ECF No. 79.
Plaintiff does not agree, however, that flooding was the only source of damage to the shopping center. Plaintiff offered Silverman's and Drew's testimony that high winds from Sandy caused the shopping center's roof membrane to split and pull away from its walls. Silverman Tr. 94:1-99:2; Drew Tr. 90:2-92:4. Plaintiff's witnesses testified that rainwater entered the shopping center through the holes in the roof, and that this rainwater damaged the first floor of the shopping center and the electronic equipment inside the walls. Silverman Tr. at 136:10-23; 162:20-163:4; Drew Tr. at 88:11-89:25.
Defendants maintain, based upon Vivenzio's testimony, that rainwater could only have accounted for minor damages to the shopping center and that flooding was the primary cause of damage to the building. See Vivenzio Aff. Ex. 1, at 6.
The conflicting testimony reflects a factual dispute that would ordinarily render the case unfit for summary judgment. See United States v. Rem, 38 F.3d 634, 644 (2d Cir. 1994) ("Resolutions of credibility conflicts and choices between conflicting versions of the facts are matters for the jury, not for the court on summary judgment."). Defendants, however, offer various arguments why summary judgement should still be granted.
a. Anti-Concurrent Cause Provisions
Defendants contend that the factual dispute regarding the source of water damage is irrelevant because both insurance policies contain so-called anti-concurrent cause provisions. The anti-concurrent cause provision of the Chubb Policy states that Chubb will not pay for losses caused directly or indirectly by any excluded causes, which include flooding. It further states: "Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." Donovan Aff. Ex. E at 30, ECF No. 90-7. The Continental Policy contains an identical provision. See id. Ex. F at 16. Defendants contend that these provisions dictate that if any of the damage to the insured property was caused by an excluded source, then all damage, including damage caused by covered sources, is also excluded. Importantly, the *69 Continental Policy excludes coverage for flooding and also for windstorms, whereas the Chubb Policy excludes flood but not wind damage.
"New York courts have interpreted [anti-concurrent cause provisions] to mean that where a loss results from multiple contributing causes, coverage is excluded if the insurer can demonstrate that any of the concurrent or contributing causes of loss are excluded by the policy." ABI Asset Corp. v. Twin City Fire Ins. Co., No. 96 CIV. 2067 (AGS), 1997 WL 724568, at *2 (S.D.N.Y. Nov. 18, 1997). So, for example, where an insurance policy excluded coverage for flooding, damage to a building resulting from floodwaters and from a wooden dock floating on the water and striking the building were excluded because the dock's movement was directly caused by the flood. See Clarke v. Travco Ins. Co., No. 13-CV-5140 NSR, 2015 WL 4739978, at *8 (S.D.N.Y. Aug. 7, 2015). Such provisions only apply, however, when there are "multiple concurrent or sequential causes of the same loss or damage, i.e. when multiple forces lead to a single direct physical loss or damage to property." Valle v. N.Y. Prop. Ins. Underwriting Ass'n, No. 651798/13, 2016 WL 1643029, at *5, 2016 N.Y. Misc. LEXIS 1547, at *6 (N.Y. Sup. Ct. Apr. 25, 2016). The provisions do not apply "when separate and distinct losses are caused by separate and distinct perils or physical forces." Id.
Silverman testified that the basement was damaged by floodwaters whereas the first floor of the shopping center was damaged by rainwater that entered the building through holes in the roof. If true, these are separate and distinct losses caused by separate and distinct physical forces. Because a jury could find that rainwater and flooding caused damage to distinct parts of the shopping center, the policies' exclusions for flooding do not bar coverage for the parts of the shopping center damaged by rainwater, notwithstanding the anti-concurrent cause provisions.
The Continental Policy, however, also contains an exclusion for wind. Section B15 of the Continental Policy states that Continental "will not pay for loss or damage caused directly or indirectly by ... [a] "Breakdown"[1] that is caused by windstorm or hail." See Donovan Aff. Ex. F, at 18. The anti-concurrent cause provision of the Continental Policy states, as noted above, that losses and damages are excluded "regardless of any other cause or event that contributes concurrently or in any sequence to the loss." Id. at 16. (emphasis added). Because the rainwater could not have entered the shopping center but for the wind damaging the roof, the Continental Policy excludes damage caused by the rainwater.
Other district courts in this Circuit have reached similar conclusions. In Alamia v. Nationwide Mutual Fire Insurance Company, 495 F.Supp.2d 362 (S.D.N.Y. 2007) the court considered an anti-concurrent cause provision and an exclusion for "earth movement." Id. at 365. The plaintiff homeowner sued its insurer after a pipe burst, causing damage to the home. Id. The insurance company denied coverage, stating that the pipe burst as a result of the home's foundation settling because of loose *70 soil under the structure. Id. The insurance company argued that since the contract excluded damage from earth movement and also contained an anti-concurrent cause provision, any damages from either the pipe or the earth movement were excluded. Id. at 368. The court agreed, discounting any distinction regarding whether the pipe or the earth movement was the primary cause of the damage. As long as the excluded hazard "was at least a contributing cause of the damage," coverage was barred. Id.
Silverman's expert report and testimony reflect his assessment that high winds opened holes in the roof, allowing rain water to enter the walls of the shopping center and damage the covered equipment. Silverman's first expert report stated that "a large area of the roof membrane was displaced, with multiple 'waves' and splits (penetrations) that permitted wind borne water to penetrate the roof and run down into the basement." Silverman Report, at 2. The report also notes that "the water infiltration appeared to be primarily from the roof penetrations, with water running vertically down the interior side of the exterior wall." Id. Silverman also testified that he observed vertical streaks on the interior walls as evidence of rainwater trapped in the wall cavity. Silverman Tr. at 136:10-23; 162:20-163:4. He concluded that Sandy damaged the roof, allowing rainwater to enter the building. That the damaged roof was the source of the water infiltration seemed to him, "rather patent, rather obvious." Silverman Tr. 102:7.
Because an excluded event, wind, contributed sequentially to the event that caused the covered equipment to break down, the damage is not covered by the Continental Policy. Continental's motion for summary judgment is granted.
The Chubb Policy, however, does not exclude wind damage.[2] For the reasons stated above, the Court rejects Chubb's argument that flood exclusion bars coverage, and will proceed to Chubb's remaining arguments.
b. Sufficiency of Plaintiff's Evidence
i. Proof of Causation of Rainwater Entering the Shopping Center
Chubb argues that plaintiff has not offered sufficient testimony to support its theory of causation-that winds from Sandy created holes in the roof of the shopping center and that rainwater flowed through these holes and damaged the shopping center. Chubb notes that Martin and Drew are not expert witnesses and argues that they may not offer expert opinion testimony regarding the cause of the damage to the shopping center. Chubb further argues that Silverman's expert report and testimony do not establish the plaintiff's theory of causation. The Court disagrees.
Chubb correctly points out that "[u]nder New York law, when the determination of whether an illness or injury was caused by some event or conduct is 'presumed not to be within common knowledge and experience,' a plaintiff must produce expert opinion evidence 'based on suitable hypotheses' in order to support a finding of causation." Amorgianos v. Nat'l R.R. Passenger Corp., 137 F.Supp.2d 147, 160 (E.D.N.Y. 2001) (quoting Meiselman v. Crown Heights Hosp., 285 N.Y. 389, 396, 34 N.E.2d 367 (1941) ), aff'd, 303 F.3d 256 (2d Cir. 2002). But plaintiffs did, in fact, offer the testimony of an expert-Silverman-on the question of causation. Silverman *71 is a professional engineer hired by plaintiff to inspect the building. He submitted two reports and testified that, in his opinion, the shopping center was damaged by water that flowed down into the walls through holes in the roof. See e.g. Silverman Report, at 2. The factfinder may not ultimately agree with this observation, but that does not mean it is legally insufficient.
Chubb maintains that plaintiff must provide expert testimony to establish both general and specific causation that Sandy was responsible for rainwater entering the building, and that Silverman falls short of doing so. But this requirement arises in the context of medical testimony, where expert opinion testimony is necessary to show both general and specific causation of an illness or injury. See e.g. Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 268 (2d Cir. 2002) (discussing specific and general causation in the context of injuries allegedly sustained by exposure to toxic chemicals). This is because " '[c]ases involving pharmaceuticals, toxins or medical devices involve complex questions of medical causation beyond the understanding of a lay person,' and thus expert testimony is required" to show causation. In re Mirena IUD Prod. Liab. Litig., 202 F.Supp.3d 304, 311 (S.D.N.Y. 2016) (quoting In re Baycol Prods. Litig., 321 F.Supp.2d 1118, 1126 (D. Minn. 2004) ).
This case presents no such complex causation issue. Though some technical explanation is helpful, the combined testimony of plaintiff's fact and expert witnesses would allow a jury to reach an informed decision regarding plaintiff's theory of causation. In this way, this case is similar to a recent decision in this district where the court held that an expert's testimony was not required to establish causation. See Fabozzi v. Lexington Ins. Co., 23 F.Supp.3d 120, 130 (E.D.N.Y. 2014). Fabozzi also involved an insurance coverage dispute where a building had collapsed and the insurer denied coverage. The court determined that "[a]lthough expert testimony may normally be preferred in cases involving the cause of property damage ... the court [was] unwilling to conclude that such testimony [was] required as a matter of law." Id. at 129. This was because "in some instances the cause of a building's collapse may be so apparent that no special knowledge is required." Id.
The testimony of Silverman, Martone, and Drew is sufficient for a reasonable jury to find that high winds from Sandy created holes in the roof of the shopping center and that rainwater flowed into these holes, soaking the walls below.
ii. Proof of Damages and Lost Business Income
The Court previously ruled that Joel Miele was barred from offering expert testimony regarding the cost of repairs to the shopping center. Following this, Chubb argues that plaintiff is unable to offer any evidence that would allow a jury to determine the costs to repair the building or of the alleged lost business income. The Court does not agree.
A plaintiff need not offer an exact amount in order to prove damages. "While plaintiffs' damages must be proven with 'reasonable certainty,' mathematical precision is not required and reasonable approximations will suffice." Great Lakes Bus. Tr. v. M/T ORANGE SUN, 855 F.Supp.2d 131, 149 (S.D.N.Y. 2012) (quotation omitted), aff'd, 523 Fed.Appx. 780 (2d Cir. 2013). Silverman prepared a 44-page engineering report detailing the damage he observed during multiple inspections of the shopping center. Additionally, he prepared a scope of work report outlining what would be required to repair the damage. These reports were given to Precision, *72 which prepared an estimate of the costs necessary to complete the repairs. See Donovan Aff. Ex. S.
Plaintiff also offered evidence to support its claim for lost business income. "Although lost profits need not be proven with 'mathematical precision,' they must be 'capable of measurement based upon known reliable factors without undue speculation.' " Schonfeld v. Hilliard, 218 F.3d 164, 172 (2d Cir. 2000) (quoting Ashland Mgmt. Inc. v. Janien, 82 N.Y.2d 395, 403, 604 N.Y.S.2d 912, 624 N.E.2d 1007 (1993) ). To establish lost profits, plaintiff provided defendants with a schedule to substantiate its business interruption loss and damages. See Donovan Aff. Ex. H, ECF No. 90-10. This schedule lists items including rental income from the businesses in the shopping center and plaintiff's operating costs and expenses. Id. Plaintiff also contends that it will offer trial testimony from its owner and principal, Lori Falco Greenberg, and from its accountants concerning lost business income. Plaintiff has made a sufficient showing on damages and lost profits to foreclose summary judgment.
CONCLUSION
Because the Continental Policy excluded damages caused by wind and flooding, and also contained an anti-concurrent cause provision, the damage caused by Hurricane Sandy to the electrical equipment at 7001 E. 71st Street is not covered. Continental's motion to dismiss is granted. With regard to the Chubb Policy, a factfinder could reasonably attribute some damage solely to a covered hazard. Accordingly, there are issues of fact that make summary judgment inappropriate and Chubb's motion for summary judgment is denied.
SO ORDERED.

The Continental Policy insures against the "Breakdown" of electrical equipment in the shopping center and rooftop HVAC units. See Continental Mem. at 5, 13-cv-638, ECF No. 89-1. The Continental Policy defines Breakdown as: "sudden and accidental direct physical loss to 'Covered Equipment,' which manifests itself by physical damage, necessitating its repair or replacement, unless such loss is otherwise excluded within the Coverage Form."See Donovan Aff. Ex. F, at 35.

The Chubb Policy does contain an endorsement excluding coverage for windstorm and hail, but the endorsement's applicability is limited to certain geographical locations in the United States, none of which is in New York. See Donovan Aff. Ex. E