Willford v. United Airlines, Inc.

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of January, two thousand twenty-three.

PRESENT:
> DENNIS JACOBS,
> ROBERT D. SACK,
> ALISON J. NATHAN,
> *Circuit Judges.*

---

HEIDI WILLFORD, aka CELESTE WILLFORD,

> *Plaintiff-Appellant*,

v.                                                                        **21-2483**

UNITED AIRLINES, INC.,

> *Defendant-Appellee*.

---

FOR PLAINTIFF-APPELLANT:         MELISSA Z. KELLY, Tucker Ellis LLP, Cleveland, OH (Benjamin C. Sassé, *on the brief*).

FOR DEFENDANT-APPELLEE:         KRISTEN MCCAW GROSSMAN, Nukk-Freeman & Cerra, P.C., Chatham, NJ (Punam P. Alam, *on the brief*).

Appeal from a judgment of the United States District Court for the Southern District of New York (Daniels, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Heidi Willford worked as a flight attendant for Defendant-Appellee United Airlines, Inc. from March 2006 until she was fired in February 2016. Willford subsequently filed this action in the U.S. District Court for the Southern District of New York asserting, as relevant to this appeal, that she was terminated due to gender discrimination and in retaliation for seeking medical leave. Specifically, Willford argued that her supervisor was biased against her because she pursued in vitro fertilization ("IVF") and that this bias led to her firing. After discovery, United moved for summary judgment dismissing all of Willford's claims, which the district court granted. Willford appeals the district court's ruling dismissing her claims of gender discrimination under Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"), and her claim of retaliation under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq*. We assume the parties' familiarity with the underlying facts and the procedural history of the case, which we discuss only as necessary to explain our decision.

I.    **Background**

Willford's discrimination claims are based on allegations related to her supervisor, Winson Waterman. In October 2015, Willford requested an emergency transfer from Dulles Airport in Washington D.C., where she was based, to an airport in the New York City area, where she was undergoing IVF treatment. The following week, Waterman called Willford to inform her that her request had been denied. Willford alleges that Waterman told her during this call that if she

2

"wanted to take time off to be a mother, then this wasn't the job for [her] and [she] should quit." Joint App'x 491.

A couple months later, on December 31st, Willford was on call to work flights on short notice out of Dulles but flew home to New York City on the 30th. Once there, she learned that she was assigned to take a flight from Dulles to Los Angeles early the next morning. About eight hours before she was scheduled to depart, Willford called the Dulles crew desk and took medical leave for the following morning, which relieved her from her assignment on the flight to Los Angeles. The next morning at 8:30 a.m., she called the crew desk back and volunteered to work a flight out of New York, where she was living at the time, stating that she had taken sick leave the night before because, in part, "I just felt so worn out I just couldn't get to an early checkout I was so tired." Supp. App'x Ex. V at 0:40–1:10. Employees at the crew desk thought that this call was suspicious and emailed Waterman expressing concerns over Willford's use of sick leave. Waterman then consulted with his own supervisor and together they agreed that an investigation into Willford's conduct was appropriate. A hearing was held before United's Dulles Base Director, Mary Kay Panos, where Willford had the opportunity to make statements and submit evidence. Afterwards, Panos concluded that Willford was dishonest and misused medical leave and that termination of Willford's employment was appropriate.

## II.    Discussion

We review orders granting summary judgment *de novo*, "construing the evidence in the light most favorable to the party against which summary judgment was granted and drawing all reasonable inferences in [her] favor." *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016).[1] Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and

---

[1] Unless otherwise indicated, all internal citations, quotation marks, and alterations are omitted.

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material dispute exists if a reasonable jury could return a verdict for the nonmoving party, but not if "the evidence to support [her] case is so slight" that no rational factfinder could find in her favor. *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).

Title VII prohibits an employer from discriminating on the basis of sex. 42 U.S.C. § 2000e-2(a)(1). This prohibition includes discrimination against "women affected by pregnancy, childbirth, or related medical conditions." *Id.* § 2000e(k). Discrimination claims under Title VII are analyzed under the *McDonnell Douglas* three-step burden shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). At issue on appeal is step three of this framework: whether Willford proffered sufficient evidence to allow a reasonable jury to conclude that United's asserted non-discriminatory reasons for her termination were pretextual.

Willford argues that Waterman's comment—that if she wanted to be a mother she should quit—evidences his bias, which led him to (1) initiate an investigation against her for misusing medical leave, (2) reject proffered evidence that would have shown her use of medical leave was legitimate, and (3) improperly influence the ultimate decision to terminate her employment. As explained below, even drawing every inference in Willford's favor, these arguments do not "show circumstances that would be sufficient to permit a rational finder of fact to infer that [United's] employment decision was more likely than not based in whole or in part on discrimination." *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 80 (2d Cir. 2009).

As a preliminary matter, it is undisputed that United's ultimate decision to fire Willford was made by Panos, not Waterman. But this fact alone does not necessarily foreclose Willford's Title VII claim because "the impermissible bias of a single individual at any stage of the [decision-making] process may taint the ultimate employment decision in violation of Title VII."

4

*Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 450 (2d Cir. 1999). However, to prevail, Willford must point to evidence establishing a "causal link between [Waterman's] alleged discriminatory bias and" the decision to terminate her employment. *Id.* at 451. Willford failed to do so for several reasons. First, Waterman was not solely, or even primarily, responsible for initiating the investigation into Willford's use of FMLA leave. As explained above, Waterman only took action, in consultation with his supervisor, after an employee at the crew desk became suspicious of Willford's conduct and expressed that suspicion to Waterman. Second, even assuming that Waterman had initiated and conducted the investigation in a biased manner, no reasonable factfinder could conclude that the ultimate decision to fire Willford was tainted by bias. Willford does not allege that Panos harbored any bias, and there is no genuine dispute that Panos considered all the evidence—including corroborating medical evidence that Willford alleges Waterman initially refused to collect—and determined that Willford used poor judgment when she flew to New York City despite being on call out of Dulles, misused FMLA leave, and was dishonest after the fact to cover it up. *See* Joint App'x at 114, 256, 259. Panos did not passively acquiesce to Waterman's recommendation or factual conclusions; she engaged in independent and—as Willford concedes—unbiased factfinding, which severs any "causal link" between Waterman's allegedly biased investigation and Willford's termination. Willford has therefore failed to point to any evidence showing that United's non-discriminatory justifications for her termination were pretextual and that her firing was instead caused in whole or in part by Waterman's discriminatory bias.

Willford's rejoinders amount to arguments that her firing was unfair and that she did not actually violate company policy. But "we do not sit as a super-personnel department that reexamines an entity's business decisions," and our concern is whether Willford's firing was the

5

result of illegal discrimination, not whether it was otherwise fair or appropriate. *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 169 (2d Cir. 2014). On this record, no reasonable jury could find that United's "proffered explanation is unworthy of credence." *Meiri v. Dacon*, 759 F.2d 989, 997 (2d Cir. 1985). We therefore affirm the dismissal of Willford's Title VII and NYSHRL claims.[2]

Willford's NYCHRL claim must be evaluated independently, but summary judgment dismissing this claim was still proper "if the record establishes as a matter of law that 'discrimination played *no* role'" in United's decision. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 n.8 (2d Cir. 2013) (quoting *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 38 n.27 (1st Dep't 2009)). New York courts have held that a single discriminatory comment made outside of the decision-making process is not sufficient to survive summary judgment when the defendant has produced "uncontroverted evidence supporting the nondiscriminatory reasons" for dismissal. *Kosarin-Ritter v. Mrs. John L. Strong, LLC*, 986 N.Y.S.2d 453, 453–54 (1st Dep't 2014). For the reasons discussed above, we conclude that Panos's decision was her own and that discrimination played no part in it. We therefore affirm the dismissal of this claim.

Finally, we affirm the dismissal of Willford's FMLA retaliation claim. The district court assumed without deciding that Willford could establish a *prima facie* case of retaliatory intent, and concluded the claim failed for the same reason her discrimination claims did: Willford did not

---

[2] "We typically treat Title VII and NY[S]HRL discrimination claims as analytically identical, applying the same standard of proof to both claims." *Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 n.9 (2d Cir. 2008). The parties addressed these claims together in their briefs, and we do so as well.

show that United's rationale for her firing was pretextual.  For the reasons stated above, we agree.[3]

Because Willford has failed to show discriminatory or retaliatory intent played any part in United's decision to terminate her employment, we must affirm the district court's grant of summary judgment on Willford's Title VII, NYSHRL, NYCHRL, and FMLA claims.   We have considered all of Willford's remaining arguments and find them to be without merit.   For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[3] We need not decide whether the *McDonnell Douglas* burden shifting framework or some lower standard applies to an FMLA claim at the summary judgment stage because Willford has not challenged the district court's application of the burden shifting framework.  *See Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 429 n.7 (2d Cir. 2016).